# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| JOEL C. KNAUFF | § | |
| | § | |
| v. | § | CIVIL NO. SA:08-CV-336-XR |
| | § | |
| DOREL JUVENILE GROUP | § | |

**ORDER re: DEFENDANT'S MOTION IN LIMINE #3**

On this date, the Court considered Defendant's Motion in Limine #3, which seeks to exclude certain exhibits and testimony concerning incidents of Defendant's ladders slipping during use.

**Background**

Plaintiff seeks to introduce the following: (1) <u>Plaintiff's exhibit 61</u>, a letter from an attorney representing Fred Boncher, who was using the 20-217 ladder in October 2006 on his flat asphalt drive to access the roof. The letter states that when Mr. Boncher stepped onto the ladder from the roof, it slipped away from its base, causing him to fall to the driveway. The letter's author then complains that the ladder has a defective foot, which caused it to slip when used as an extension ladder; (2) <u>Plaintiff's exhibit 62</u>, a May 7, 2007 notice of claim filed in Jasper Circuit Court, Indiana by Autumn and Michael Harney against Defendant seeking "compensation of medical bills, wages lost, hired help, and pain and suffering due to improper footing on your ladder when being used in

extension position," along with a letter written by Michael Harney stating that his wife was using the 20-217 model ladder in November 2006 to access the attic when "the ladder feet slipped on the concrete floor of the garage causing her to fall 9 feet" and an email asking Defendant to "look at the type of rubber feet that was used on this ladder" because it slipped when being used in the extension position and following all directions as stated, and related customer service incident reports; (3) <u>Plaintiff's exhibit 63</u>, a November 4, 2002 letter from John A. Sexton to Defendant informing Defendant that he was using the 20-217model ladder according to the instructions on October 17, 2002 to access his roof, when it slid out from under him as he neared the top, causing him injuries; <u>Plaintiff's exhibit 64</u>, Defendant's customer service computer records reflecting that a customer's mother was on the 20-217 ladder and began to feel it move, customer "was on other side of ladder on the ground when the feet slid and wedged her feet between ladder and fridge. Medical personnel freed the ladder from the fridge and took CS to hospital;" "Injuries: broken toes and hairline fracture to ankle" and also an incident report stating that on December 29, 2005 "consumer was on roof and proceeded to go down ladder. When consumer put foot on first wrung [sic] and put the other foot on ladder it began to scoot out from under him. The ladder was on a concrete surface. Injuries: broken leg/tibia."; <u>Plaintiff's exhibit 65</u>, a "2003 Product Technician Priority Reporting From" reflecting the report of the December 29, 2005 injury; <u>Plaintiff's exhibit 66</u>, customer service customer comments screen shot regarding an injury report from November 2005

in which the customer "was on the roof and had ladder against house on wood decking. Consumer stepped down onto first wrung [sic] and ladder slipped from under consumer. Injuries: cuts and bruises to arm, forearm, right leg, and foot; <u>Plaintiff's exhibit 68</u>, a Consumer Product Incident Report describing an incident in which a consumer using the 20-217 model ladder in December 2004, extended at approximately twelve feet high, while painting in a kitchen "was coming down the ladder when the slip resistant feet slipped from underneath consumer" and she fell.

Defendant argues that the evidence of other incidents is irrelevant because they are not substantially similar to the incident at issue, that even if they are similar, introduction of evidence pertaining to other incidents would be unduly prejudicial, and that the customer complaint reports contain inadmissible hearsay. Plaintiffs have submitted their proposed exhibits, as well as the deposition testimony of Defendant's corporate representative, Terry Emerson, concerning the reports for the Court's review.

## Analysis

### A. Defendant's Rule 402 relevance objection

Defendant argues that Plaintiff has not established that the other incidents of ladders slipping are substantially similar to the incident at issue, and thus they are not relevant. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

3

without the evidence. FED. R. EVID. 401.

"Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980); *see also Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir. 1986) ("Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of design defect."). The Fifth Circuit has held that "[w]hen evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993). "[E]ven when it is offered solely to show notice, the proponent of such evidence must establish reasonable similarity." *Johnson*, 988 F.2d at 580. This is a more relaxed standard than the "substantially similar" requirement for proving liability. *Jackson*, 788 F.2d at 1082. If the incidents are reasonably similar, any differences in the circumstances surrounding the occurrences go merely to the weight to be given the evidence. *Id.*

The "substantially similar" predicate for the proof of similar accidents is defined by the defect (or the product) at issue. *Jackson*, 788 F.2d at 1082. The question of admissibility of substantially similar accidents is necessarily

4

determined on a case-by-case basis, with consideration to be given to any number of factors, including the product or component part in question, the plaintiff's theory of recovery, the defenses raised by the defendant, and the degree of similarity of the products and of the other accidents. *Brazos River Auth. v. GE Ionics*, 469 F.3d 416, 426 (5th Cir. 2006). The accidents need only be substantially similar, not exactly the same; and differences between the accidents not affecting their substantial similarity go to the weight of the evidence and not to its admissibility. *Fenstermacher v. Telelect, Inc.*, 21 F.3d 1121, *7 (10th Cir. 1994) (unpublished).

Plaintiff alleges that he was climbing the 20-219 model ladder in his home in December 2007, on a tile surface, in its fully extended position, when its feet slid rearward, causing Plaintiff to fall and be injured. The other incidents all involve the 20-217 model ladders, but according to Defendant's counsel and the deposition of Terry Emerson, Defendant manufacturers a group of ladders called the "World's Greatest Ladder," which are similar but vary in height. The ladder used by Mr. Knauff was the 19-foot ladder, model 20-219. The 17-foot ladder, model 20-217, is apparently the same as the 20-219 except that it is two feet shorter. It has the same foot design as the 20-219.

Plaintiff's exhibit 61 alleges an incident in October 2006 using the 20-217 model on a flat asphalt drive in which the ladder slipped away from the base due to allegedly defective feet. Plaintiff's exhibit 62 involves a November 2006 incident of the 20-217 model ladder feet slipping on a concrete garage floor, due

5

to allegedly defective feet. Plaintiff's exhibit 63 involves an October 2002 incident involving the 20-217 model, but does not state the surface that the ladder was on or specifically contend that the feet were the problem. Plaintiff's exhibit 64 states that in December 2007, a customer's mother was on the 20-217 ladder and it slid, trapping the customer's foot between ladder and fridge. The surface is not specifically indicated. Exhibits 64 and 65 also include an incident alleging that on December 29, 2005 "consumer was on roof and proceeded to go down ladder. When consumer put foot on first wrung [sic] and put the other foot on ladder it began to scoot out from under him. The ladder was on a concrete surface." Plaintiff's exhibit 66 reports an injury from November 2005 in which the customer "was on the roof and had ladder against house on wood decking. Consumer stepped down onto first wrung [sic] and ladder slipped from under consumer." Plaintiff's exhibit 68 describes an incident in December 2004, in which the ladder was extended at approximately twelve feet high in a kitchen and the customer "was coming down the ladder when the slip resistant feet slipped from underneath consumer." Thus, the incidents involve similar ladders with the same feet being used as extension ladders, with similar alleged failures (defective feet that slipped), also resulting in falls or injuries.

The Court finds that all of the incidents are reasonably similar such that they may be used to show notice. Further, the Court finds that all of the incidents except Plaintiff's exhibit 63[1] are substantially similar such that they

---

[1] In exhibit 63, the consumer was using the ladder outside, but does not specify the surface, and thus the surface could have been grass or mud. In the other exhibits in which the

6

may be used for other purposes, such as proof of defect. They all involve the use of a similar ladder with the same feet, in its extended position, on ordinary surfaces, and the feet allegedly slipping while the user was on the ladder. *See Soden v. Freightliner Corp.*, 714 F.2d 498 (5th Cir. 1983) ("the evidence of the other lawsuits involved allegations of post-crash fuel fires in Freightliner trucks caused by the defective design of the fuel system, which were the same allegations being made by the plaintiffs. Thus, the substantial similarity requirement was satisfied with respect to the allegations made in the suits."). In Plaintiff's exhibit 63, the outdoor surface is not indicated, so the motion in limine is granted with regard to that exhibit insofar as Plaintiff seeks to introduce it to show something other than notice. The motion in limine based on relevance is otherwise denied.

**B. Defendant's Rule 403 prejudice objection**

Defendant argues that, even if the Plaintiff can demonstrate substantial similarity, the evidence of other incidents should be excluded because their introduction would result in unfair prejudice, jury confusion, and undue expenditure of trial time on collateral issues, and thus the potential prejudice far outweighs the probative value of the evidence.

"[E]ven when a substantial similarity of circumstances is established, the district court has broad discretion to exclude such evidence under Rule 403 of the Federal Rules of Evidence." *Johnson*, 988 F.2d at 579. Under Rule 403, relevant

---

surface is not specifically identified (ex. 64 and ex. 68), it is nevertheless clear that the ladder was being used indoors.

7

evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. FED. R. EVID. 403. Insofar as Plaintiff seeks to introduce evidence of the other incidents to prove something other than notice (especially defect), the danger is that the parties will have to litigate the truth of the allegations in each of the complaints, resulting in a multitude of mini-trials and diverting the focus from the incident at issue. Of course, if they are introduced only to show notice, this will not be an issue.

The Court finds that it would not be unduly prejudicial to the defendant, and the prejudice would not outweigh the probative value, if Plaintiff were permitted to introduce two or three of the other incidents to prove something other than notice. Further, because it appears that these exhibits may be excluded in any event as hearsay, the Court will deny the motion in limine at this time. If the exhibits are admissible under a hearsay exception, the Court will consider the Rule 403 issue at the time Plaintiff seeks to introduce them. Thus, the motion in limine based on the Rule 403 objection is denied at this time.

**C. Defendant's Hearsay Objection**

Defendant asserts that incident reports summarizing claims or complaints from consumers are inadmissible hearsay. Defendant asserts that these reports are completed by Defendant's customer service representative after receiving calls from consumers, but contain two levels of hearsay. Defendant asserts that,

8

even if the incident reports qualify as business records,[2] the customer statements contained in them constitute an additional level of hearsay that must be excluded.

Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. *See United States v. Turner*, 189 F.3d 712, 719-20 (8th Cir. 1999) ("[W]hen the source of information and the recorder of that information are not the same person, the business record contains hearsay upon hearsay."). The Fifth Circuit has explained the problem as follows:

> If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, if the source of the information is an outsider, as in the facts before us, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. Further, Federal Rule of Evidence 805 requires that all levels of

---

[2] Rule 803(6), the business records hearsay exception, includes "records of regularly conducted activity," defined as

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED. R. EVID. 803(6).

9

> hearsay satisfy exception hearsay requirements before the statement is admissible.

*Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (citations omitted). Thus, "if the information contained in business records is supplied by an outsider, the outsider's statement must fall within another hearsay exception to be admissible." *United States v. Johnson*, 178 F.3d 1290 (5th Cir. 1999) (per curiam).[3]

The "2003 Product Technician Priority Reporting Form" and "Customer Service Incident Report" contained within P-62, as well as P-64, P-65, and P-66, appear to be based on information provided by the customer,[4] in which case Defendant is correct that, to the extent Plaintiff is attempting to prove the truth of the statements by customers within the records, those statements must themselves satisfy a hearsay exception.[5]

---

[3] However, if "the business entity has adequate verification or other assurance of accuracy of the information provided by the outside person," the business records exception may still apply. *U.S. v. Sokolow*, 91 F.3d 396, 403 (3d Cir. 1996). Since the trustworthiness of the evidence is the justification of the business records exception, the verification must provide a strong assurance of accuracy. *See id.* at 403-04.

[4] In the section labeled "Desc. of Incident," the form states "CS WIFE WAS USING LADDER TO GET UP IN THE ATTIC IN THE GARAGE ..." Presumably, "CS" means "customer says" or "customer states."

[5] Of course, some of the exhibits – P-61 (letter from Boncher attorney to Defendant), parts of P-62 (Notice of Claim, letter from Michael Harney to Defendant, email from Harney to Defendant), P-63 (letter from John Sexton to Defendant), and P-68 (what appears to be a Consumer Product Safety Commission incident report) – were produced by Defendant but were not created by Defendant. These are letters and/or emails sent to Defendant by injured customers and what appears to be a CPSC report. To the extent they are offered for their truth, Plaintiff must establish that these documents fall within a hearsay exception for them to be admissible. *Williams v. Remington Arms*, Civ. A. No. 3:05-CV-1383, 2008 WL 222496 (N.D. Tex. Jan. 28, 2008) ("But when the complaints are offered to prove the truth of the matters asserted in the complaints, they are hearsay."); *Mathews v. Remington*, 2009 WL 1220541 (W.D. La. May 4, 2009) ("Letters or complaints written by customers are not

Defendant's motion in limine based on a hearsay objection is sustained to the extent that any of the exhibits are offered to prove the truth of the matters asserted therein. Plaintiff must approach the bench and establish the applicability of a hearsay exception if Plaintiff wishes to introduce these exhibits for their truth.

**Conclusion**

Defendant's Motion in Limine #3 is granted in part and denied in part as discussed herein.

It is so ORDERED.

SIGNED this 6th day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

admissible as business records and are, therefore, inadmissible hearsay."); *Mary Kay v. Weber*, 601 F. Supp. 2d 839, 851 (N.D. Tex. 2009) ("Although the record of the e-mails would be covered by the Rule 803(6) exception, the e-mails themselves would still have to be covered by some other hearsay exception. They are not. Thus, the e-mails are inadmissible hearsay.").